Michael Catalano, J.
The Attorney-General of the State of New York has brought this proceeding to enjoin respondent Levinson from certain practices proscribed by section 396 of the General Business Law. Respondent Amigone has been dropped from the proceeding by order of this court, bused upon the stipulation in open court by the attorneys for all the parties. The verified petition is buttressed by affidavits of four former employees of Levinson and of some dozen and a half customers of the Levinson enterprises. By these it has been shown that said respondent established and pursued a plan or scheme as follows:
1. Aluminum window assemblies, aluminum patio assemblies and aluminum and other residence sidings were periodically advertised at very low prices, and telephone inquiries were solicited.
2. Telephone inquiry brought one or more of respondent’s salesmen to the residence of the prospect. Then there would follow a pattern of conduct discouraging the sale of the advertised article and resulting time after repeated time in the sale of a much more expensive article.
3. Such pattern consisted of disparagement of the advertised article by word and by sample. If the prospect persevered in demanding the advertised article, there was protracted delay in delivery, enough to discourage many of the customers and foster cancellation of orders.
*484 There were so many instances of orders for the advertised article delayed and unfilled as to demonstrate an intention and practice not to sell the advertised article and not to sell at the advertised price. No commission was paid on the sale of the advertised article. Instructions to salesmen were to sign up an order for the advertised article and use such signed order as a lever for forcing a different sale. The forcing procedure included exhibiting a poor-appearing specimen of the advertised article, sometimes purposely damaged to make it look worse; telling the prospect that the advertised article was a much thinner metal; that it would pit and tarnish; that it was an overlapping window likely to leak; that the advertised patio would pit, darken, leak and pull away. The victimized prospect, usually committed in writing, and perhaps by a cash deposit, to what was made to appear a bad deal, was in such fashion softened for the coup de grace. The coup consisted of a switch to the purchase of a model costing several times as much as the one advertised.
This, then, was the plan or scheme which has been overwhelmingly demonstrated. Respondent’s denials and protestations are voluminous, but they leave untouched the salient facts. Of what worth is a protestation that salesmen were not instructed to kill sales of the advertised articles when it remains undisputed that salesmen received no commissions on such sales ? The salesman, whatever the instructions to him were, had to switch the sale or he went unpaid.
Section 396 of the General Business Law, entitled ‘ ‘ Unlawful selling practices ”, provides, in part:
“ 1. No person, firm, partnership, association, or corporation, or agent or employee thereof, shall, in any manner, or by any means of advertisement, or other means of communication, offer for sale any merchandise, commodity, or service, as part of a plan or scheme with the intent, design, or purpose not to sell the merchandise, commodity, or service so advertised at the price stated therein, or with the intent, design or purpose not to sell the merchandise, commodity, or service so advertised.
“ 2. Whenever there shall be a violation of this section, an application may be made by the attorney general in the name of the people of the state of New York to a court or justice having jurisdiction to issue an injunction, and upon notice to the defendant of not less than five days, to enjoin and restrain the continuance of such violation; and if it shall appear to the satisfaction of the court or justice that the defendant is, in fact, violating this section, an injunction may be issued by such court or justice, enjoining and restraining such action or violation, *485 without requiring proof that any person has, in fact, been misled or deceived or otherwise damaged thereby.” (L. 1958, ch. 849, eft. July 1, 1958.)
In 1958, the Governor’s Message to the Legislature stated (N. Y. State Legis. Annual, 1958, p. 381): “As various district attorneys have indicated publicly, the present Penal Law does not give them adequate authority to prosecute those who cheat consumers by means of vicious sales promotional practices. One such practice is bait advertising, where products are advertised for sale at a price at which the seller has no intention of selling. Another problem is that of fictitious bargain claims. I recommend legislation to provide adequate protection to the consumer against those evils, both through changes in the Penal Law and by the provision of new civil remedies.”
Chief Judge Conway, speaking for the majority of the Court of Appeals, in People v. Glubo (5 N Y 2d 461) said (p. 473) : “ new section 396 of the General Business Law (L. 1958, ch. 849) * * * authorizes the Attorney-General to bring a civil action for an injunction where it appears that a person advertises merchandise with the intent, design or purpose (a) not to sell the merchandise so advertised at the price stated in the advertisement or (b) not to sell the merchandise so advertised * * * By the enactment of section 396 of the General Business Law, the Legislature merely gave to the Attorney-General the right to seek a civil injunction against certain acts which are criminal. This is not without precedent. The false advertising of securities comes within the ban of section 421 of the Penal Law. Nevertheless, the Attorney-General is authorized by the Martin Act (General Business Law, art. 23-A) to seek a civil injunction against untrue and misleading advertisements made with the intent to sell securities (People v. Federated Radio Corp., 244 N. Y. 33).”
In a civil action seeking injunction because of the ‘ ‘ bait and switch” advertising tactics of the defendant, Chief Judge Conway, again speaking for the nrajority of the Court of Appeals, in Electrolux Corp. v. Val-Worth (6 N Y 2d 556) said (p. 566): “ Most of the evidence on those issues was based on the testimony of (a) Adler, the investigator, (b) Forde, the salesman who testified for the plaintiff, and (c) of defendant Sacks. There was a sharp conflict of testimony, particularly between Forde and Sacks. That raised an issue of credibility which was primarily in the hands of the original trier of the facts * * * Thus, the facts disclose a sales promotion with the following steps:
*486 ‘11. Advertising a 1 rebuilt Electrolux ’ at a very attractive price in order to invite inquiry.
“ 2. Gaining admittance to people’s homes under the guise of answering the inquiries, but really for the purpose of selling a much more expensive new machine in competition with Electrolux.
“ 3. ‘ Switching ’ the transaction by ‘ knocking ’ or disparaging the ‘ rebuilt Electrolux ’ and introducing the new machine.” * * #
“ But if defendants’ methods are deceitful and run contrary to accepted business ethics, the public policy of the State is relevant, though perhaps not decisive, in evaluating a claim of unfair competition” (p. 568). “activities of the nature of 1 bait and switch ’ advertising are deceptive and harmful to the public interest.”
“ Here, the customer, who is * * * trapped in his own home, is faced with a choice between the rebuilt machine as to which only he made inquiry and the new machine, with the salesman using all of his talents to effectuate the ‘ switch ’ ” (p. 569).
Concluding, in pant: “ that the defendants be enjoined from offering any vacuum cleaner under the trade name Electrolux at an attractive price for the purpose of luring prospects with the object of diverting them from the advertised article by disparagement or other like conduct and for the purpose of inducing them to purchase a product or products not manufactured by the plaintiff” (p. 572).
Here, it is clear that defendant Levinson advertised and offered for sale certain aluminum merchandise as part of a scheme with intent not to sell such merchandise at the stated price, and with intent not to sell the same as advertised. The fact that any person has been misled or deceived or otherwise damaged thereby is immaterial. This is a vicious sales promotional practice known as “ bait advertising ”, “ bait and switch advertising ” and “ fictitious bargain claims.”
This is a civil proceeding, not criminal. The evidence may be found in affidavits sufficient by a fair preponderance of the believable facts. Any issue'on credibility is for this court as the original trier of the facts without a jury.
The respondent Levinson’s methods are deceitful and violate accepted business ethics, thus the public policy of the State as described in section 396 of the General Business Law, is relevant and decisive. The Legislature may and should define the ethics of the market place so as to protect fully the trusting public too often exemplified by the lone housewife in the home wherein the cunning salesman has been permitted ingress not *487 unlike the wolf in sheep’s clothing. Analogy to time-honored fables describing the villain of the piece may often strike to the core of the truth more quickly than belabored logic. In a word, let the home be inviolate.
Therefore, let the respondent Levinson, his firm, his partnership, his association, his corporation, his agents and his employees be enjoined and restrained from in any manner offering merchandise for sale as a part of a scheme or plan, with the intent not to sell said merchandise or not to sell said merchandise at the advertised price; from using a sales plan or method of compensation which is designed to prevent or discourage salesmen from selling the advertised product, or which penalizes them when they do sell the advertised product; from encouraging advocating and countenancing the disparagement by acts or words, of the advertised product or of the guarantee, credit terms, availability of service for repairs or parts; from refusing to take orders for the advertised merchandise to be delivered within a period of reasonable time; from demonstrating or showing a product which is defective, unusable, or impractical for the purposes represented or implied in the said advertisement; from accepting a deposit for the advertised products, then switching to higher-priced products; from engaging in “bait advertising” and in all other “bait and switch ” practices in connection with sales of an advertised product which may be construed as “ unselling ” with the intent and purpose of selling other merchandise instead.
Motion granted, without costs.